IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JASON E. WALKER, )<br>)<br>Petitioner, )<br>)<br>v. ) Civ. No. 10-83-SLR<br>)<br>PERRY PHELPS, )<br>Warden, and ATTORNEY )<br>GENERAL OF THE STATE )<br>OF DELAWARE )<br>)<br>Respondents. ) | |

Jason Walker. Pro se petitioner.

James T. Wakley, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for respondents.

**MEMORANDUM OPINION**

December 18, 2012
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Presently before the court is Jason E. Walker's ("petitioner") amended application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (D.I. 1; D.I. 8) Petitioner is a Delaware inmate in custody at the James T. Vaughn Correctional Center, Delaware. For the reasons that follow, the court will dismiss his application.

## II. FACTUAL AND PROCEDURAL BACKGROUND[1]

On April 19, 2004, about ten minutes before closing at 8:00 p.m., two men walked into Tull's Aquarium and Pet shop and walked directly to the fish room at the rear of the store. *Walker*, 2007 WL 481957 at *1. Joseph Alexander was working at the store with his uncle, Kenneth Tull. Alexander followed the two men to the fish room and asked if they needed help. One of the men inquired about aggressive fish. After an exchange of information, the man asked to purchase a red devil fish. Alexander climbed a ladder to retrieve and bag the fish; when he turned around, one of the men had a black, semiautomatic gun pointed in his face. The man told Alexander to get down and the other started to duct tape Alexander's hands and feet together. While this was being done, Alexander saw his uncle walking toward the fish room. He heard the gunman yell, "Get down," and then Alexander heard two shots fired and the sound of breaking glass. After the men ran out of the store, Alexander was able to free himself. He found his uncle in the front of the store, bleeding, with a phone in his hand. Kenneth Tull's 911 call was received at 7:58 in the evening. Tull died from his injuries

---

[1] The factual history is recounted from the Delaware Supreme Court's opinion in *Walker v. State*, 919 A.2d 562 (Table), 2007 WL 481957 (Del. 2007). The procedural history is summarized from the State's answer (D.I. 14) and the state court record (D.I. 18).

on April 30, 2004. *Id.*

Several witnesses who lived or worked near Tull's Aquarium and Pet Store were able to give information to the police regarding two black men in an older model, black Cadillac, which was seen speeding away from Tull's around 8 p.m. on April 19, 2004. *Id.* at *2. One witness was able to give police a partial Delaware license tag number of the Cadillac. Police arrested petitioner on April 30, 2004. That same evening, police officers conducted a photographic line-up for eyewitness Joseph Alexander. Without hesitation, Alexander identified petitioner as the perpetrator of his uncle's murder. *Id.*

In August 2004, petitioner was indicted and charged, inter alia, with two counts of first degree capital murder. (D.I. 14) In July 2005, a Superior Court jury found petitioner guilty on all counts. During the sentencing phase, the jury recommended that petitioner be sentenced to life imprisonment. *Id.* The Superior Court imposed that sentence shortly thereafter, and the Delaware Supreme Court affirmed petitioner's convictions on direct appeal. *See Walker*, 2007 WL 481967, at *4.

In November 2007, petitioner filed a motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"). The Superior Court denied the Rule 61 motion, and the Delaware Supreme Court affirmed that decision. *State v. Walker*, 2009 WL 1451799 (Del. Super. 2009); *Walker v. State*, 2010 WL 376878 (Del. Mar. 31, 2010).

Petitioner timely filed his original and amended applications.[2] (D.I. 1; D.I. 8) The

---

[2]The court concurs with the State's conclusion that statutory tolling renders petitioner's original application (D.I. 1) timely filed which, in turn, means that his amended application (D.I. 8) is timely. (D.I. 14 at 3)

State filed its answer, contending that petitioner's sole claim must be denied for failing to satisfy § 2254(d). (D.I. 14) Petitioner's application is ready for review.

## III. GOVERNING LEGAL PRINCIPLES

### A. The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003). Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). AEDPA also imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see Woodford*, 538 U.S. at 206.

One prerequisite to federal habeas review is that a petitioner must exhaust all remedies available in the state courts. *See* 28 U.S.C. § 2254(b)(1). The exhaustion requirement is grounded on principles of comity to ensure that state courts have the initial opportunity to review federal constitutional challenges to state convictions. *Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by "fairly presenting" the substance of the federal habeas claims to the state's highest court, either on direct appeal or in a post-conviction proceeding, and in a procedural manner permitting the state courts to consider them on the merits. *See*

3

*Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997).

### B. Standard of Review

When a state court has adjudicated a petitioner's habeas claim on the merits, a federal district court can only grant habeas relief if the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1), (2); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). Clearly established federal law for § 2254(d)(1) purposes refers to Supreme Court holdings, rather than dicta, that were clearly established at the time of the pertinent state court decision. *See Greene v. Palakovich*, 606 F.3d 85 (3d Cir. 2010). In turn, a claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009). The deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied"; as recently explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, __ U.S. __, 131 S.Ct. 770, 784-85 (2011).

4

Finally, when reviewing a habeas claim, a federal court must presume that the state court's determinations of factual issues are correct. 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); Campbell v. Vaughn, 209 F.3d 280, 286 (3d Cir. 2000); Miller-El v. Cockrell, 537 U.S. 322, 341 (2003)(stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions).

## IV. DISCUSSION

In his sole ground for relief, petitioner asserts that the Superior Court violated his Sixth Amendment right to self-representation by denying his two requests to represent himself. The Delaware Supreme Court denied this argument as meritless during petitioner's direct appeal. Therefore, petitioner will only be entitled to habeas relief if the court concludes that the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, clearly established Federal law, or was based on an unreasonable determination of the facts.

The clearly established federal law for claims alleging the denial of a defendant's right to self-representation was articulated by the United States Supreme Court in Faretta v. California, 422 U.S. 806 (1975). Pursuant to Faretta, a defendant in a state criminal case has a constitutional right to proceed without counsel when he voluntarily, knowingly, and intelligently chooses to do so, and the state may not constitutionally force a lawyer upon him. Id. at 834-35; Johnson v. Zerbst, 304 U.S. 458, 464-65

5

(1938). More specifically, "[t]he Sixth Amendment embodies two competing rights because exercising the right to self-representation necessarily means waiving the right to counsel." *Buhl v. Cooksey*, 233 F.3d 783, 789 (3d Cir. 2000).

Although a defendant's right to represent himself is fundamental in nature, representation by counsel is the standard, not the exception, and there is a strong presumption against the waiver of the right to counsel. *Martinez v. Court of Appeal of California*, 528 U.S. 152, 161 (2000); *Patterson v. Illinois*, 487 U.S. 285, 307 (1988). Consequently, unlike a criminal defendant's right to counsel, which stays in effect until waived, a defendant's right to self-representation is not triggered until it is clearly, unequivocally, and timely asserted. *Faretta*, 422 U.S. at 835. Once a defendant unequivocally and timely asserts his constitutional right to self-representation, the trial court must conduct a colloquy ("*Faretta* inquiry") with the defendant to determine that his waiver of his right to counsel is knowing and voluntary, and inform him of the nature of the charges against him, the possible penalties, and the dangers of self-representation. *Buhl*, 233 F.3d at 791. "This obligation [to conduct a *Faretta* inquiry] arises under the Constitution, and it applies to state, as well as federal judges." *Id.* at 792.

In this case, petitioner made two requests to represent himself. Petitioner filed his first request on April 25, 2005 in a single-page pro se application seeking to discharge his attorneys and represent himself. However, the trial court did not become aware of petitioner's initial request until the eighth day of trial, when defense counsel read a letter to the court expressing petitioner's wish to represent himself for the

remainder of the trial. Once defense counsel finished reading the letter, the trial judge called a sidebar conference to address petitioner's request. Defense counsel then informed the trial judge about petitioner's original written request filed on April 25, 2005, stating that petitioner "may have sent something to the Court that got docketed back at another time saying he wanted to represent himself. He never pursued it with us, so we thought, let it be, because he's clearly better off with us than with himself." (D.I. 17, State's An. Br. in *Walker v. State*, No. 517,2005 at 10)

After the side-bar conference, the trial judge conducted a colloquy with petitioner, explaining

> [a]nd the conversation we've just had at sidebar is — was nothing more than his [defense counsel] reading this [petitioner's newest letter requesting to proceed pro se] to me and indicating that he believes that some time ago, you may have filed something with the Court. It's never been brought to my attention and the attorneys didn't hear anything more from you about it and so nothing was done about it, but there may be a paper in the file where you request the opportunity to represent yourself. We are almost at the end of the State's case here. We began this process last week, as you know, with jury selection Monday, Tuesday, and Wednesday, and then it resumed on Monday of this week and then we started the trial on Tuesday and it is now Friday morning. So any request to represent yourself is just untimely. It comes way too late to make a change in this trial. Okay?

(D.I. 17, State's An. Br. in *Walker v. State*, No. 517,2005 at 10-11)

On direct appeal, petitioner contended that the trial court violated his Sixth Amendment right to self-representation by denying his two requests to proceed pro se. The Delaware Supreme Court rejected petitioner's arguments and affirmed the trial court's decision, holding that petitioner's actions constituted an abandonment of his first request, and that his second request was untimely.

In reaching its decision, the Delaware Supreme Court specifically applied *Faretta*

7

and its progeny to petitioner's claim. Consequently, the Delaware Supreme Court's decision was not contrary to Supreme Court precedent. See Fahy v. Horn, 516 F.3d 169, 196 (3d Cir. 2008)(Supreme Court of Pennsylvania's decision was not "contrary to" clearly established Federal law because appropriately relied on its own state court cases, which articulated the proper standard derived from Supreme Court precedent).

The court's inquiry is not over, however, because it must also determine whether the Delaware Supreme Court's decision involved an unreasonable determination of facts, or an unreasonable application of Supreme Court precedent to petitioner's case.

### A. Petitioner's April 25, 2005 Request To Proceed Pro Se

"[I]n certain cases it may be appropriate to consider the decisions of inferior federal courts as helpful amplifications of Supreme Court precedent." Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 890 (3d Cir. 1999). Consequently, the court will analyze petitioner's Faretta claim pursuant to the three-pronged inquiry articulated in Buhl v. Cooksey, which requires the court to: (1) determine if petitioner clearly and unequivocally asserted his right to self-representation, thereby triggering the trial court's obligation to conduct a Faretta inquiry; (2) determine if the trial court's Faretta inquiry was adequate; and (3) consider what impact, if any, petitioner's subsequent conduct had upon his previously asserted right to self-representation.[3] See Buhl, 233 F.3d at 791-800; United States v. Peppers, 302 F.3d 120, 132 (3d Cir. 2002); see also Dorman v. Wainwright, 798 F.2d 1358, 1366 (11th cir. 1986).

---

[3]In Peppers, the Third Circuit identified an additional requirement that a trial court must assure itself that the defendant is competent to stand trial. Peppers, 302 F.3d at 132. However, because the record does not indicate any question as to petitioner's competency to waive his right to trial, the court has no reason to address this prong.

8

### 1. Did petitioner adequately assert his right to self-representation?

When the Delaware Supreme Court affirmed the trial court's decision on direct appeal, it explicitly held that petitioner's "inaction can only be interpreted as an abandonment of **his initial April 25, 2005 request to represent himself**." *Walker*, 2007 WL 481957, at *3 (emphasis added). Considering that petitioner's initial motion was an unauthorized pro se filing by a represented defendant, the court could reasonably conclude that petitioner did not "adequately" assert his right to self-representation. Nevertheless, in an exercise of prudence, the court liberally construes the Delaware Supreme Court's statement as an implicit holding that petitioner's initial request for self-representation was adequately asserted. Thus, the court will proceed to the second step of the *Buhl* inquiry.

### 2. The trial court's failure to conduct a *Faretta* colloquy

It is undisputed that a trial court has a constitutional obligation to conduct a *Faretta* inquiry on a defendant's unequivocal and timely motion for self-representation. *Buhl*, 233 F.3d at 791. Pursuant to *Faretta*, a defendant who wishes to proceed pro se at trial "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." *Faretta*, 422 U.S. at 835. A court is not required to follow any particular script in order to satisfy the *Faretta* inquiry requirement. *Iowa v. Tovar*, 541 U.S. 77 (2004). Nevertheless, in recognition of *Faretta*'s general requirement that a waiver of the right to counsel "ought not [be] accept[ed] . . . absent a penetrating and comprehensive examination of all the circumstances," *United States v. Stubbs*, 281

9

F.3d 108, 118-19 (3d Cir. 2002), the Third Circuit has established a "useful framework" of fourteen model questions for a court to ask when a defendant asserts a request to proceed *pro se*. *Peppers*, 302 F.3d at 135; *United States v. Jones*, 452 F.3d 223, 234 (3d Cir. 2006).

In this case, the trial court did not conduct a *Faretta* hearing on petitioner's initial motion to proceed pro se filed in April 2005. Therefore, its *Faretta* inquiry was clearly inadequate. *See Buhl*, 233 F.3d at 799. The court now turns to the third prong of the *Buhl* inquiry.

### 3. Did petitioner abandon his previously asserted right to self-representation?

In petitioner's case, the Delaware Supreme Court applied precedent from the Third and Seventh Circuits, and held that petitioner's inaction following the filing of his April 2005 request to proceed pro se constituted an abandonment of his right to self-representation. Petitioner contends the Delaware Supreme Court's holding warrants habeas relief for two reasons. First, petitioner alleges that the Delaware state courts erred in holding that he had abandoned his right to proceed pro se because he did not clearly and specifically waive his previously asserted right. (D.I. 8, at 14, citing *Johnson v. Zerbst*, 304 U.S. at 464; *Fuentes v. Shevin*, 407 U.S. 57 (1972)). Second, petitioner alleges that his acquiescence to counsel's representation did not amount to a waiver of his right to proceed pro se because counsel informed him prior to trial that the trial court had denied his initial request. In essence, petitioner alleges that defense counsel's explanation prevented him from asserting a new request to represent himself.

10

Courts must indulge every reasonable presumption against a waiver of counsel. See *Johnson*, 304 U.S. at 464. Consequently, the "right to self-representation [] is waived if not asserted, while the right to counsel is not. Since the right of self-representation is waived more easily than the right to counsel at the outset, before assertion, it is reasonable to conclude that it is more easily waived at a later point, after assertion." *Brown v. Wainwright*, 665 F.2d 607, 611 (11th Cir. 1982). While the United States Supreme Court has not explicitly considered whether a properly asserted *Faretta* right may be waived, or abandoned, through subsequent conduct, the Supreme Court has indicated that such a waiver may occur. For instance, in *McKaskle v. Wiggins*, 465 U.S. 168, 182-84 (1984), the Supreme Court opined that a defendant may waive his *Faretta* rights even after he has been granted the right to proceed pro se and standby counsel has been appointed, explaining that "[o]nce a pro se defendant invites or agrees to any substantial participation by counsel, subsequent appearances by counsel must be presumed to be with the defendant's acquiescence, at least until the defendant expressly and unambiguously renews his request that standby counsel be silenced." Similarly, as set forth in *Faretta*, representation by unwanted counsel is constitutionally impermissible "unless the accused has acquiesced in such representation." *Faretta*, 465 U.S. at 182.

After reviewing petitioner's arguments concerning his April 2005 request to proceed pro se pursuant to the foregoing principles, the court concludes that both arguments are unavailing. To begin, although the *McKaskle* Court opined that "[p]articipation by counsel with a *pro se* defendant's express approval is, of course,

11

constitutionally unobjectionable," *McKaskle*, 465 U.S. at 182, the Supreme Court has never held that a defendant's waiver of his right to self-representation can only be effectuated by an explicit verbal or written retraction. Rather, it is a defendant's **waiver of the right to counsel** that must be affirmative and on the record. *See Michigan v. Jackson*, 475 U.S. 625, 633 (1986)(emphasis added). Therefore, the fact that petitioner did not explicitly retract his previously asserted right to self-representation does not demonstrate that the Delaware state court decisions warrant federal habeas relief.

In turn, petitioner's argument that defense counsel prevented him from re-asserting his right to proceed pro se by telling him that the trial court had denied his April 2005 request is equally unavailing. As an initial matter, the record does not contain any indication that defense counsel informed petitioner that the trial court had denied his initial request. Petitioner's defense attorneys explained to the trial judge on July 22, 2005 that petitioner "never pursued" with them his initial request to represent himself, so they "let it be." (D.I. 17, at 10) Given these circumstances, the court rejects as factually baseless petitioner's contention that defense counsels' actions somehow "prevented" him from re-asserting his request for self-representation.

Moreover, although a defendant "need not make fruitless motions" to "renew his request to represent himself . . . or forego cooperation with defense counsel" in order to avoid waiver of a previously asserted right to self-representation when the trial court denied that request,[4] it appears that the same cannot be said when a defendant's

---

[4]*Brown v. Wainwright*, 665 F.2d 607, 612 (5th Cir. 1982); *see Buhl*, 233 F.3d at 806; *United States v. Arlt*, 41 F.3d 516, 523 (9th Cir. 1994); *Raulerson v. Wainwright*,

12

request for self-representation has not been explicitly denied or ruled upon. For instance, in cases involving judicial inaction on a defendant's request for self-representation, at least two Federal circuit courts have explicitly held that a defendant abandons his request to proceed pro se if he sits by in silence and lets counsel conduct the defense without re-asserting the right at any juncture of trial. *Rayford v. Johnson*, 253 F.3d 706 (Table), 2001 WL 498712, at *2 (5th Cir. Apr. 13, 2001)(per curiam); *United States v. Johnson*, 223 F.3d 665, 668 (7th Cir. 2000). The Third Circuit recently indicated agreement with these cases in an unpublished decision, *Brathwaite v. Phelps*, 418 F. App'x 142, 147 (3d Cir. 2011).[5]

The court acknowledges that these Federal circuit cases do not constitute clearly established Federal law for § 2254(d) purposes. Nevertheless, the court looks to these cases for guidance in their amplification of the applicable Supreme Court precedent.

---

732 F.2d 803, 809 (11th Cir. 1984).

[5]In *Brathwaite*, the trial court never ruled on the petitioner's request to proceed pro se, but the petitioner incorrectly believed that his request had been denied and, therefore, never reasserted his request for self-representation during counsel's defense of his case. On direct appeal, the Delaware Supreme Court held that the trial court did not violate petitioner's right to self-representation because petitioner abandoned the right by failing to reassert it. *Brathwaite v. State*, 741 A.2d 1025 (Del. 1999). On federal habeas review, the district court held that the Delaware Supreme Court's decision involved a reasonable application of Supreme Court precedent. *Brathwaite v. Phelps*, 2009 WL 3345595 (D. Del. Oct. 16, 2009). In affirming the district court's denial of habeas relief, the Third Circuit first noted that, while *McKastle* involved a factual scenario different than the one before it, the *McKastle* Court "nonetheless suggested that after a defendant asserts his right to self-representation, he may waive that right without a specific colloquy with the trial court or similar formal procedure." *Id.* The Third Circuit then held that "the Delaware Supreme Court's decision [that the petitioner abandoned his right to self-representation by acquiescing to counsel's appointment without either objecting to the appointment of counsel or renewing his request to represent himself] was [] a reasonable application of Supreme Court precedent under § 2254(d)." *Id.* at 148.

13

Turning back to petitioner's case, the court notes that: (1) the trial court never expressly denied petitioner's initial April 2005 request to proceed pro se; (2) petitioner stood silent while his attorneys filed pre-trial motions, represented him at office conferences and oral arguments, and conducted the first eight days of trial; and (3) petitioner's "silence" (or failure to pursue his right to self-representation) at critical junctures cannot be attributed to any action on the part of defense counsel. In these circumstances, the court concludes that the Delaware Supreme Court reasonably determined the facts of the case in finding that petitioner acquiesced to defense counsel's continued representation. Additionally, given the absence of any Supreme Court precedent precluding a state court from holding that a defendant can abandon a previously asserted right to self-representation by acquiescing to counsel's continued representation, the court cannot conclude that the Delaware Supreme Court unreasonably applied United States Supreme Court precedent in holding that petitioner waived his right to self-representation by failing to re-raise the issue during the critical junctures of trial.

### B. Petitioner's Second Request To Proceed Pro Se

There is no Supreme Court precedent articulating an absolute right of self-representation after the defendant's trial begins, and the applicable Supreme Court cases reflect the basic principle that a trial court has broad discretion in granting mid-trial requests to proceed pro se. The absence of clear direction from the Supreme Court as to when a *Faretta* request is untimely means that courts are free to set the timing element as long as their standards comply with *Faretta*'s holding that a request

"weeks before trial" is timely. *See Williams*, 529 U.S. at 412-13. Significantly, the majority of Federal courts considering the issue have concluded that the right of self-representation is curtailed "after trial has commenced – i.e., at least after the jury has been empaneled," meaning that "district courts have discretion to deny any untimely request to proceed pro se after weighing the 'prejudice to the legitimate interests of the defendant' against the 'potential disruption of the proceedings in progress already in progress.'" *United States v. Bankoff*, 613 F.3d 358, 373 (3d Cir. 2010)(collecting cases).

Here, the trial court explicitly denied petitioner's mid-trial request as untimely, and the Delaware Supreme Court's statement – that the "potential disruption to the proceedings in progress clearly outweighed any possible prejudice to [petitioner's] legitimate interests"[6] – shows that the Delaware Supreme Court also viewed the request as untimely. Having already determined that petitioner abandoned his first request to represent himself, the court views petitioner's mid-trial request as a new and completely independent request to proceed pro se, rather than as a re-assertion of his initial request. In these circumstances, and given the absence of any United States Supreme Court precedent requiring a court to treat as timely a mid-trial request for self-representation, the court cannot conclude that the Delaware Supreme Court's decision was based on an unreasonable determination of facts or involved an unreasonable application of Supreme Court precedent.

Accordingly, the court rejects petitioner's argument that the trial court denied his

---

[6]*Walker*, 2007 WL 481957, at *2.

15

right to self-representation.

## V. CERTIFICATE OF APPEALABILITY

Finally, the court must decide whether to issue a certificate of appealabilty. See 3d Cir. L.A.R. 22.2 (2011). The court may issue a certificate of appealability only when a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This showing is satisfied when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the denial of a constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000).

For the reasons stated above, the court concludes that petitioner's habeas application must be denied. Reasonable jurists would not find this conclusion debatable. Consequently, petitioner has failed to make a substantial showing of the denial of a constitutional right, and a certificate of appealability will not be issued.

## VI. CONCLUSION

For foregoing reasons, the court will deny petitioner's application for habeas relief filed pursuant to 28 U.S.C. § 2254.

An appropriate order will be entered.